# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**June 2, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SHARON JACKSON,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-484**         (JCN: 2025002458)

**MONROE COUNTY**
**COUNCIL ON AGING,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sharon Jackson appeals the November 17, 2025, order of the Workers' Compensation Board of Review ("Board"), which affirmed the claim administrator's order rejecting Ms. Jackson's claim for workers' compensation benefits and found Ms. Jackson did not suffer a right knee injury in the course of and resulting from her employment. Respondent Monroe County Council on Aging ("Monroe County") filed a response.[1] Ms. Jackson did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On October 4, 2024, Ms. Jackson, a kitchen worker, sustained a right knee injury while she was sealing meals in the kitchen of her employer, Monroe County. On that same date, Ms. Jackson was seen at the emergency department at WVU Medicine Princeton Community Hospital and reported right leg pain and stiffness. Ms. Jackson stated that she was always on her feet and experienced muscle cramps that were relieved with creams. However, on the morning of the injury, she did not experience any relief, so she went to MedExpress, where treatment providers sent her to the emergency department to be evaluated for deep vein thrombosis. Ms. Jackson did not report suffering an injury at work to the emergency room staff. The emergency department performed a peripheral venous duplex of the right lower extremity, which showed no evidence of acute deep venous

---

[1] Ms. Jackson is represented by Gregory S. Prudich, Esq. Monroe County is represented by Jeffrey M. Carder, Esq.

thrombosis. The clinical impression was pain of the right lower extremity and a muscle spasm in the right calf.

On October 7, 2024, Taylor McGhee Burton, PA-C, treated Ms. Jackson at the Family Practice following her visit to the emergency department. Ms. Jackson reported localized pain in the right popliteal and superior calf region and stated she had been using a cane for ambulation. Ms. Jackson denied any known injury and was assessed with popliteal pain and a gastrocnemius muscle tear. On October 16, 2024, PA-C Burton again saw Ms. Jackson for a follow-up appointment. At this visit, Ms. Jackson stated her right leg pain was localized to the right popliteal and superior calf region. She reported that her pain was improving but was severe when she moved her knee or attempted to bear weight on her leg. She again denied any known injury. The assessment was popliteal pain and dependent edema.

On October 18, 2024, Ms. Jackson signed a statement stating she arrived at work at 6:00 a.m. on October 4, 2024, and had been experiencing right leg pain for approximately a week prior. She stated that her right leg locked up from the knee down while she was standing still sealing meals, and she was unable to continue her work. She stated that when she clocked out at 7:00 a.m., she required assistance from another employee to get to her vehicle. On that same date, LaTasha Waldron signed a statement stating she was employed by Monroe County as a head cook. She stated that Ms. Jackson went to the doctor on September 30, 2024, for right leg pain and was told she pulled a muscle. Ms. Waldron further stated that Ms. Jackson also complained of right leg pain on October 2, 2024. On October 4, 2024, Ms. Waldon stated Ms. Jackson told her that her leg popped and she was unable to move, so Ms. Waldron made Ms. Jackson leave work.

On October 26, 2024, Ms. Jackson underwent an MRI of her right knee, and the impression was a vertical radial tear of the posterior horn/posterior root medial meniscus resulting in a partial extrusion of the body segment from the medial joint line; patellofemoral chondromalacia; small joint effusion; but the lateral meniscus, cruciate ligaments, and collateral ligaments appeared intact. On October 31, 2024, Ms. Jackson submitted an Employees' and Physicians' Report of Injury stating she sustained a right knee injury on October 4, 2024, when she was working in the kitchen sealing meals. PA-C Burton completed the physician's portion of the application on November 4, 2024, and stated Ms. Jackson sustained an occupational injury to her right leg/knee and described the nature of the injury as a meniscus tear, lower leg strain, and popliteal pain.

On December 5, 2024, Ms. Jackson was seen by Gregory Southers, PA-C, from the Orthopedic Center of the Virginias, and Ms. Jackson presented with complaints of medial right knee pain, difficulty fully straightening the knee, and pain interfering with activities. She was diagnosed with a right knee medial meniscal tear with early arthritis. A corticosteroid injection was recommended, and it was noted that Ms. Jackson could return to work doing sedentary work. On December 11, 2024, the claim administrator entered an

2

order denying Ms. Jackson's claim for workers' compensation benefits because she did not sustain an injury in the course of and resulting from her employment. Ms. Jackson protested this decision.

Ms. Jackson testified at a deposition on August 19, 2025, that her job duties include washing dishes and placing prepared meals on trays and carts. She stated that the kitchen area is narrow, and her job requires constant walking back and forth. On the date of her injury, she arrived at 6:00 a.m. and began preparing the meals to seal. She testified that she sealed the first set of meals and was taking them to the warming oven in another room. When she shut the oven door, she twisted around to come back to the kitchen. She stated that she then got a cart and went back towards the kitchen to her workstation. While she stood still preparing meals to seal, her knee locked up and she experienced excruciating pain. Ms. Jackson testified that she told her co-worker she was injured. Ms. Jackson also testified that she needed assistance to get to her car, and a coworker retrieved a wheelchair, which she used as a walker. Ms. Jackson further stated that she had circulation issues with her lower legs for a few years that caused lower leg pain, but it did not affect her knee. She testified that the pain she experienced on October 4, 2024, was nothing like she had ever experienced before, and she never had any previous treatment or medical care for her knee prior to this injury. Ms. Jackson believed her injury was caused by her twisting around in the kitchen to get the cart.

On November 17, 2025, the Board entered an order affirming the claim administrator's December 11, 2024, order and finding Ms. Jackson did not suffer a right knee injury in the course of and resulting from her employment. It is from this order that Ms. Jackson now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

3

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Ms. Jackson asserts one assignment of error and argues the Board was clearly wrong in finding she did not sustain an injury in the course of and resulting from employment. We disagree. "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *see also* W. Va. Code § 23-4-1(a) (2024).

To be compensable, a causal connection between simply walking and employment must be established. The Supreme Court of Appeals of West Virginia ("SCAWV") held that the risk test for determining whether an injury has resulted from the claimant's employment is as follows: "In the context of workers' compensation law, there are four types of injury-causing risks commonly faced by an employee at work: (1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks." Syl. Pt. 4, *Hood v. Lincare Holdings, Inc.*, 249 W. Va. 108, 894 S.E.2d 890 (2023). In *Hood*, the SCAWV held that the risk of injury the claimant encountered while descending a short, non-defective staircase in the course of his employment is a neutral risk and that "[t]he act of walking down stairs is an everyday, commonplace activity, which most people do on a daily basis, whether at home, work, or in a retail establishment." *Id.* at 113, 894 S.E.2d at 895. The SCAWV then found the claimant's claim failed due to a lack of causal connection between the injury and the employment because the injury did not result from employment when he was simply walking at his worksite, and he felt a pop in his foot followed by immediate pain and difficulty walking. *Id.* at 115-116, 894 S.E.2d at 897-898; *see also Kittle v. ACNR Res., Inc.*, 252 W. Va. 57, 918 S.E.2d 307 (Ct. App. 2023).

In this case, the Board found that a preponderance of the evidence did not support the finding that Ms. Jackson sustained a right knee injury as a result of her employment. The Board noted that Ms. Jackson testified that she was standing still at her work station when her knee locked up, and she then experienced excruciating pain and was unable to walk.[2] The Board further relied on Ms. Jackson's October 4, 2024, reports to staff at the

---

[2] Although Ms. Jackson now argues that her knee injury resulted from a twisting motion when she placed meals in the warming oven and turned to return to her workstation, her more contemporaneous statement dated October 18, 2024, does not indicate any type of twisting motion occurred. Instead, Ms. Jackson stated she was merely standing sealing meals when her knee locked up. The Board noted Ms. Jackson's testimony about twisting but found that her knee locked up after she returned to her workstation and was merely

4

emergency department at WVU Medicine Princeton Community Hospital that she was always on her feet and experienced muscle cramps that were relieved with creams, but on this day they provided no relief. Finally, the Board relied on Ms. Jackson's denial of a known injury during her appointment on October 7, 2024, at the Family Practice. Based on these facts, the Board held that Ms. Jackson failed to carry her burden to establish that the neutral risk of injury from simply walking was peculiar to her employment or that she faced an increased quantity of risk because of her employment. Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Jackson failed to establish she suffered an injury resulting from her employment. The Board analyzed Ms. Jackson's alleged injury for increased risk, noted that the facts are similar to those in *Kittle*, and found Ms. Jackson did not establish that standing still placed her at an increased risk of injury.

We find that the Board's order is supported by substantial evidence, and, as the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order and denying Ms. Jackson's application for benefits.

Accordingly, we affirm the Board's November 17, 2025, order.

Affirmed.

**ISSUED:** June 2, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

standing. The Board's factual analysis concerning how her injury occurred is entitled to substantial deference. *See* Syl. Pt. 1, *Rockspring Develop., Inc. v. Brown*, 250 W. Va. 236, 902 S.E.2d 785 (2024) ("When reviewing a decision of the West Virginia Workers' Compensation Board of Review…, this Court will give deference to the Board's findings of fact[.] The decision of the Board may be reversed or modified… if it…is based upon material findings of fact that are clearly wrong.").